IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MOYER PACKING COMPANY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 07-00974 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant. | : | |

**<u>MEMORANDUM</u>**

Giles, J.                                                                                          July 8, 2008

## I.  INTRODUCTION

Before the court is Defendant United States of America's Motion to Dismiss Plaintiff

Moyer Packing Company's Complaint for lack of subject matter jurisdiction pursuant to Rule

12(b)(1)[1] of the Federal Rules of Civil Procedure and Plaintiff's Motion for Summary Judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff's claims arise from a

government inspector's alleged release into production of a beef carcass, the tissue of which had

been sent for testing, before the test results were obtained and returned.  The carcass was

permitted to be commingled and processed.  The test results showed the carcass to be

contaminated.  Promptly thereafter, all meat that was so processed was successfully recalled from

public sale and destroyed along with all other contaminated product not shipped.

Plaintiff brings suit pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §

1346(b), alleging negligent inspection (Count I), negligent performance of undertaking to render

services to Plaintiff (Count II), and negligent performance of undertaking of services to the

---

[1] Presumably, Defendant's motion is brought pursuant to Federal Rule of Civil Procedure
12(b)(1).

general public causing harm to Plaintiff (Count III).

Issues raised by the parties' motions are whether: (1) Plaintiff's claims for Good Samaritan liability satisfy the private analogue requirement under the FTCA so as to permit the exercise of jurisdiction; (2) Plaintiff's FTCA claims are barred by the misrepresentation defense so as to preclude jurisdiction; and (3) genuine issues of material fact exist as to actual negligence.

For the reasons that follow, Defendant's Motion to Dismiss is GRANTED, IN PART, and DENIED, IN PART, and Plaintiff's Motion for Summary Judgment is DENIED, in its entirety.

In summary, after determining that Defendant brings a factual challenge under Rule 12(b)(1), the court finds that Plaintiff cannot satisfy the private analogue requirement under the FTCA for its Good Samaritan claim for liability for negligently performing services Defendant undertook to provide to Plaintiff, applying the Restatement (Second) of Torts § 323.  Plaintiff was not the direct intended beneficiary of Defendant's conduct.  Therefore, Count II will be dismissed for lack of jurisdiction.  However, the court finds that Plaintiff could conceivably satisfy the private analogue requirement as to its negligent inspection and Good Samaritan claims for negligently performing services that Defendant undertook to render to the general public, thereby causing harm to Plaintiff, applying Restatement (Second) of Torts § 324A.  Therefore, Counts I and III cannot be dismissed.  The court also concludes that Plaintiff's FTCA claims are not barred by the misrepresentation defense inasmuch as they are not for negligent misrepresentation, but rather negligent conduct.  Finally, as to Plaintiff's summary judgment motion, the court concludes that genuine issues of material fact exist as to whether Defendant failed to exercise reasonable care in releasing or permitting the release of carcass No. 05125274 and whether Plaintiff's reliance on the government inspector's alleged negligent conduct was

reasonable under the circumstances presented.

## II.  FACTUAL BACKGROUND

Assertions of fact are derived from memoranda submitted in support of and in opposition to Defendant's motion to dismiss pursuant to Rule 12(b)(1) and Plaintiff's motion for summary judgment pursuant to Rule 56(c), and all exhibits attached thereto.[2]  Undisputed facts follow. Disputed issues of fact are duly noted.

Plaintiff is a beef processing and rendering company located in Souderton, Pennsylvania. (Pl.'s Mot. for Summ. J., Ex. 1, Raspaldo Decl. (hereinafter "Raspaldo Decl.") ¶ 1; Def.'s Resp. to Statement of Undisputed Facts in Supp. of Pl.'s Mot. for Summ. J. (hereinafter "Def.'s Resp. to SUF") ¶ 1.)  It is agreed that Plaintiff operates under the oversight of the United States Department of Agriculture's ("USDA") Food Safety and Inspection Service ("FSIS"), but the oversight level is in dispute.  (Raspaldo Decl. ¶ 3; Def.'s Resp. to SUF ¶ 2.)  The FSIS conducts testing of the beef carcasses at Plaintiff's plant.

The FSIS performs two types of tests on beef carcasses: (1) a Fast Antimicrobial Screen Test ("FAST test"), which is performed in-plant and is designed to detect anti-microbial drug residues, and (2) a laboratory test ("LAB test"), which is performed at an FSIS laboratory and is designed to diagnose a pathological condition and/or confirm the results of a FAST test.  FSIS Directive 10,230.6 (Jan. 6, 2006), available at http://www.fsis.usda.gov/OPPDE/rdad/ FSISDirectives/10230-6.pdf; FSIS Directive 10,220.3 (Aug. 23, 2006), available at

_____

[2]  See discussion infra. Part III.A.2, Application Of The Rule 12(b)(1) Standard Of Review.

http://www.fsis.usda.gov/OPPDE/rdad/FSISDirectives/10220-3.pdf.  At Plaintiff's plant in February 2006, FAST test results were generally processed for the FSIS within forty-eight hours. (Raspaldo Decl. ¶ 4; Def.'s Resp. to SUF ¶ 3.)  LAB test results usually took at least five to seven days to process.  (Raspaldo Decl. ¶ 4; Def.'s Resp. to SUF ¶ 4; Pl.'s Mot. for Summ. J., Ex. 5, FSIS Pathology Report (hereinafter "FSIS Pathology Report"); Pl.'s Reply Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. 2.)  FSIS personnel decided which tissue samples needed to be sent for LAB tests and which tissue samples needed FAST tests.  (Raspaldo Decl. ¶ 5; Def.'s Resp. to SUF ¶ 5.)

In February 2006, all carcasses which FSIS designated for either a FAST or LAB test were placed under official FSIS retention by FSIS inspectors until the test results were returned. (Raspaldo Decl. ¶ 6; Def.'s Resp. to SUF ¶ 6.)  Plaintiff contends that once a test was returned, the FSIS inspector would either sign to release a carcass to Plaintiff if the test result was negative or direct the condemnation of a carcass if the test result was positive.  (Raspaldo Decl. ¶ 6.) Defendant asserts that the effect of the FSIS inspector's signature on a document evidencing negative test results was authorization for another FSIS inspector, but only the federal inspector, to retrieve the carcass from the USDA retention area and then turn it over to Plaintiff's employees for production processing.  (Def.'s Resp. to SUF ¶ 6; Def.'s Mem. of Points and Authorities in Opp. to Pl.'s Mot. for Summ. J. (hereinafter "Def.'s Mem. Opp. Summ. J."), Ismail Decl. (hereinafter "Ismail Decl.") ¶ 9.)

Plaintiff maintained a Carcass Retained Log ("CRL").  The CRL listed all carcasses that FSIS had designated for a FAST or LAB test and reflected Plaintiff's understanding of the dates that the FSIS took the tissue sample and the type of test FSIS ordered.  (Raspaldo Decl. ¶ 7;

Def.'s Resp. to SUF ¶ 7.)  Plaintiff contends, and Defendant disputes, that in February 2006, the FSIS inspector not only reviewed the test results daily but advised an employee in Plaintiff's Quality Assurance Group of the results of each test.  (Raspaldo Decl. ¶ 8; Pl.'s Mot. for Summ. J., Ex. 2, Figueroa Decl. (hereinafter "Figueroa Decl.") ¶¶ 2-3; Def.'s Resp. to SUF ¶ 8.) Plaintiff further contends that an FSIS inspector would sign the CRL to release to Plaintiff carcasses that had negative test results.  (Raspaldo Decl. ¶ 8; Figueroa Decl. ¶ 3.)  Defendant, however, asserts that the effect of the FSIS inspector's signature was only to permit an FSIS inspector to retrieve carcasses with negative test results from the USDA retention area to turn over to Plaintiff's employees.  (Def.'s Resp. to SUF ¶ 9; Ismail Decl. ¶ 10.)

It is undisputed that, on February 1, 2006, FSIS inspectors took tissue samples from several carcasses, which were segregated under the control of FSIS and listed on the CRL. (Figueroa Decl. ¶ 4; Pl.'s Mot. for Summ. J., Ex. 3, Carcass Retained Log (hereinafter "Carcass Retained Log"); Def.'s Resp. to SUF ¶ 10.)  Most of those tissue samples underwent FAST testing.  (Figueroa Decl. ¶ 5; Carcass Retained Log;  Def.'s Resp. to SUF ¶ 11.)  The CRL originally showed that the tissue sample from one carcass, No. 05125274, was sent for a LAB test.  (Figueroa Decl. ¶ 6; Carcass Retained Log; Def.'s Resp. to SUF ¶ 12; Ismail Decl. ¶ 12.)

On February 3, 2006, Sheila Figueroa, an employee in Plaintiff's Quality Assurance Group, met with the FSIS Inspector-in-Charge, Dr. Nader Ismail.  (Figueroa Decl. ¶ 7; Raspaldo Decl. ¶ 9; Def.'s Resp. to SUF ¶ 13; Ismail Decl. ¶ 7.)  What happened at that meeting is at the core of the liability question.  The two participants offer significantly conflicting versions of events.

Figueroa avers that during the meeting she had a discussion with Ismail regarding test

results.  (Figueroa Decl. ¶¶ 8-12.)  She claims that she specifically recalls that she asked Ismail

whether he had any carcasses that had been sent for FAST test results and which could be

released.  (Figueroa Decl. ¶ 8.)  She states that Ismail took the CRL and began signing it to

release carcasses.  (Figueroa Decl. ¶ 9.)  She avers that she saw Ismail sign for release of carcass

No. 05125274, which was clearly designated on the CRL for a LAB test.  (Figueroa Decl. ¶ 10.)

She states that she asked Ismail unequivocally whether carcass No. 05125274 could be released

because the CRL listed the carcass as a LAB test and not a FAST test.  (Figueroa Decl. ¶ 11.)

Figueroa avers that Ismail told her that it was "OK," and continued to sign the CRL.  (Figueroa

Decl. ¶ 12.)

Figueroa declares that, on that same day, she consulted with her supervisor, Jose

Raspaldo, as to the actions of Ismail pertaining to carcass No. 05125274.  (Figueroa Decl. ¶ 13;

Raspaldo Decl. ¶ 9.)  Raspaldo told her that the FSIS knew which test it performed on carcasses.

(Id.)  Figueroa avers that Raspaldo then directed her to change the note on the CRL for carcass

No. 05125274 from "LAB" to "FAST."  (Figueroa Decl. ¶ 13; Raspaldo Decl. ¶ 10.)  In his

declaration, Raspaldo corroborates this conversation.  (Raspaldo Decl. ¶¶ 9-10.)  Figueroa states

that she followed Raspaldo's directive, made the change, and initialed it on the CRL.  (Figueroa

Decl. ¶ 13.)

In his declaration, on the other hand, Ismail avers that on February 3, 2006, he did not

have a discussion of *any* kind with Figueroa, let alone regarding test results, when she presented

the CRL to him.  (Def.'s Resp. to SUF ¶¶ 8, 14; Ismail Decl. ¶ 9.)  According to Ismail, when

Figueroa presented him with the CRL, next to one of the carcasses listed on the form, the word

"LAB" was *already* crossed out and Figueroa's initials were written in.  (Ismail Decl. ¶ 7.)  He

states that he believed Figueroa was only seeking FAST test results for each carcass listed on the CRL.  (Ismail Decl. ¶ 8.)  Ismail claims that he verified the FAST test results for each carcass and signed across every carcass on the CRL, confirming only negative FAST test results.  (Id.) Nevertheless, Ismail did sign for release of carcass No. 05125274.  (Figueroa Decl. ¶ 10; Carcass Retained Log; Def.'s Resp. to SUF ¶ 16; Ismail Decl. ¶ 8.)  He contends that he did so only because of a misrepresentation created on the CRL by Plaintiff, a misrepresentation upon which he relied.  (See Ismail Decl. ¶ 8.)

Ismail avers that the effect of his signature, or that of any FSIS inspector, on the CRL was only to permit Plaintiff to seek the USDA processing inspector or other USDA employee to unlock the FSIS locked hold rail to retrieve a designated carcass from the USDA retention area. (Ismail Decl. ¶ 10.)  He avers that his signature did not authorize Plaintiff to retrieve on its own and without the presence of an USDA official any carcass from the USDA retention area.  (Id.) He declares that on February 3, 2006, no employee of Plaintiff asked him to release carcass No. 05125274 or any other carcass by an FSIS inspector going down and removing it from the USDA retained area, and that he did not authorize inspector to do so.  (Def.'s Resp. to SUF ¶ 8; Ismail Decl. ¶¶ 9, 11.)  He claims that at no time did he give any of Plaintiff's employees permission to remove any carcasses from the USDA retention area without the presence of an USDA inspector. (Ismail Decl. ¶ 11.)

Ismail further avers that, on February 3, 2006, Plaintiff's employees removed carcasses from the USDA retention area entirely at Plaintiff's direction and approval, without FSIS presence or authority.  (Ismail Decl. ¶ 12.)  He declares that Plaintiff's employees removed the carcasses from the USDA retention area by improper and unauthorized mechanical manipulation

of the USDA carcass lock rail, and without unlocking the government lock.  (Id.)  Ismail avers

that Plaintiff's employees also removed retained tags from carcasses.  (Id.)

 Regardless of which version of events is correct, on February 3, 2006 at 1:41 p.m. carcass

No. 05125274 was sent into production.  (Figueroa Decl. ¶ 12; Pl.'s Mot. for Summ. J., Ex. 4,

Stoltzfus Decl. (hereinafter "Stoltzfus Decl.") ¶ 4; Def.'s Resp. to SUF ¶ 22.)  On February 8,

2006, the test result for the tissue from carcass No. 05125274, which had been sent for LAB test

on February 1, 2006, was returned positive for malignant lymphoma.  (FSIS Pathology Report;

Figueroa Decl. ¶ 4; Carcass Retained Log; Def.'s Resp. to SUF ¶¶ 10, 23-25; Def.'s Mem. Opp.

Summ. J., Tawadrous Decl. (hereinafter "Tawadrous Decl.") ¶ 11.)

 Upon receiving the LAB results for carcass No. 05125274, Dr. DiLella, another FSIS

inspector, inquired as to the whereabouts of the carcass.  (Figueroa Decl. ¶ 15; Def.'s Resp. to

SUF ¶ 26; Tawadrous Decl. ¶ 11.)  Hibraim Lopez, another employee in Plaintiff's Quality

Assurance Group, looked up its location and informed DiLella that it had already been released

into production.  (Figueroa Decl. ¶ 16; Def.'s Resp. to SUF ¶ 27.)  DiLella requested Plaintiff to

conduct a voluntary recall, directing that all beef product that had come into contact with carcass

No. 05125274 be retrieved and destroyed.  (Figueroa Decl. ¶ 17; Def.'s Resp. to SUF ¶ 28;

Tawadrous Decl. ¶ 14.)  Plaintiff instituted product recovery and market withdrawal actions

related to all beef product potentially commingled with contaminated meat from carcass No.

05125274.  (Stoltzfus Decl. ¶ 2; Def.'s Resp. to SUF ¶ 29; Tawadrous Decl. ¶¶ 14-19.)

 Plaintiff claims that it retrieved and destroyed 543,661 pounds of beef product.  (Pl.'s

Mot. for Summ. J., Ex. 6, Claim for Damage, Injury, or Death (hereinafter "Pl.'s Claim for

Damage, Injury, or Death"), Attachment B: Losses and Expenses Attributable to Incident

(hereinafter "Attachment B").)  Some, Plaintiff directed its customers to destroy and some Plaintiff had not yet shipped.  (Id.)  The claimed value of the destroyed beef product is $868,430.85.  (Stoltzfus Decl. ¶¶ 5-6; Pl.'s Claim for Damage, Injury, or Death, Attachment B.)  Plaintiff claims that in retrieving the beef it incurred freight costs, external inspection fees, additional labor costs, disposal costs, and storage costs, such that its total damages are $1,014,933.39.  (Stoltzfus Decl. ¶¶ 7-10; Pl.'s Claim for Damage, Injury, or Death, Attachment B.)

On June 9, 2006, Plaintiff submitted a Claim for Damage, Injury, or Death to the FSIS.  (Stoltzfus Decl. ¶ 11; Pl.'s Claim for Damage, Injury, or Death.)  The FSIS received Plaintiff's claim, but did not respond.  (Stoltzfus Decl. ¶¶ 12-13; Pl.'s Claim for Damage, Injury, or Death; Pl.'s Mot. for Summ. J., Ex. 7, Return Receipt; Def.'s Resp. to SUF ¶¶ 36-38.)

## III.  DEFENDANT'S MOTION TO DISMISS

### A.      Applicable Standard of Review.

### 1.      Legal Standard For A Motion To Dismiss Under Rule 12(b)(1).

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must dismiss the matter if it lacks subject matter jurisdiction over the complaint.  Fed. R. Civ. P. 12(b)(1).  Dismissal is warranted under Rule 12(b)(1) only if the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous."  Gould Elec. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000) (quoting Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)) (quotations omitted).  Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual in form.

Id. at 176; Mortensen v. First. Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  A

facial challenge attacks the complaint on its face and, for such a challenge, the court must

consider only the complaint's allegations and to do so in the light most favorable to the plaintiff.

Id.

      A factual challenge contests the existence of subject matter jurisdiction, apart from any

pleadings.  Id.  In reviewing a factual challenge, the court "is free to weigh the evidence and

satisfy itself as to the existence of its power to hear the case," even where disputed material facts

exist.  Mortensen, 549 F.2d at 891.  In a factual challenge, the plaintiff has the burden of

persuasion to show that jurisdiction exists.  Gould, 220 F.3d at 178; Mortensen, 549 F.2d at 891.

If the defendant presents evidence contesting any allegations in the pleadings, the presumption of

truthfulness does not attach to the plaintiff's allegations and the plaintiff may present facts by

affidavit or deposition or in an evidentiary hearing.  Gould, 220 F.3d at 177; Mortensen, 549 F.2d

at 891, 893 n.18.  "[I]f there is a dispute of material fact, the court must conduct a plenary trial on

the contested facts prior to making a jurisdictional determination."  Gould, 220 F.3d at 177.

      Nevertheless, in deciding a factual challenge under Rule 12(b)(1), the court "must

demand *less* in the way of jurisdictional proof than would be appropriate at a trial stage."

Mortensen, 549 F.2d at 892 (emphasis added).  Because claims under the FTCA often present

situations where "the merits of the case are closely intertwined with the jurisdictional proof,"

court must rigorously follow this rule.  Gould, 220 F.3d at 178 ("[A] court must determine

subject matter jurisdiction over an FTCA claim . . . so long as it demands less in the way of

jurisdictional proof than it would for a ruling on the merits.")  For this reason, in FTCA cases the

"question of actual negligence should be resolved on the merits, rather than in a jurisdictional

challenge." <u>Matsko v. United States</u>, 372 F.3d 556, 561-62 (3d Cir. 2004) (citing <u>Mortensen</u>,

549 F.2d at 892).


      **2.      Application Of The Rule 12(b)(1) Standard Of Review.**

      Defendant does not allege that it brings its motion to dismiss pursuant to Rule 12(b)(1),

although such is assumed because it is styled as a motion to dismiss for lack of subject matter

jurisdiction.  Neither party addresses the applicable standard of review.  Defendant does not state

whether its Rule 12(b)(1) challenge is facial or factual.  It has, however, included a factual

background section and attached exhibits in support of its motion, which consist of declarations

of several FSIS officials: Armia Tawadrous, Philip S. Derfler, and Nader Ismail.  Because these

exhibits are not referenced in the Complaint and raise issues of fact, the court must presume that

Defendant is contesting issues of fact and, therefore, brings a factual challenge pursuant to Rule

12(b)(1).[3]

      In response to Defendant's motion to dismiss for lack of subject matter jurisdiction,

Plaintiff appears to treat Defendant's motion as a facial challenge.  The Response does not

include a factual background section, attach any exhibits, or raise any issue of disputed fact.

Defendant filed its motion to dismiss simultaneously with its response to Plaintiff's motion for

summary judgment, in which Plaintiff argued that subject matter jurisdiction under the FTCA

exists.  In support of its summary judgment motion, Plaintiff submitted several exhibits,

---

    [3]  Even if Defendant brings a <u>facial</u> challenge pursuant to Rule 12(b)(1), the outcome
would be the same.  Because Defendant's motion to dismiss, brought as a factual challenge, is
granted, in part, as a matter of law and denied, in part, as a matter of fact and law under the
higher standard, it would necessarily be similarly decided under the lower standard that is
applicable to a facial challenge.

including the CRL at issue, the government's pathology report, Plaintiff's claim to the

government for damage, injury, or death, and declarations of several of Plaintiff's employees,

Jose Raspaldo, Sheila Figueroa, and Gary Stoltzfus.  Defendant submitted the same exhibits,

referenced above, both in support of its motion to dismiss and its response in opposition to

Plaintiff's motion for summary judgment.  The court held oral argument on both motions, at

which time disputed material facts were raised.  Thus, both Defendant's motion to dismiss and

Plaintiff's motion for summary judgment, and contested issues of FTCA jurisdiction raised

therein, have been fully briefed.

Therefore, to the extent that Plaintiff's response to Defendant's motion to dismiss treats

Defendant's motion as a factual challenge, the court considers Plaintiff's exhibits attached to its

motion for summary judgment[4] and concludes that Plaintiff has had the opportunity to present

facts by affidavit or deposition consistent with its burden of persuasion to show that subject

matter jurisdiction under the FTCA exists.  See Gould, 220 F.3d at 177-78; Mortensen, 549 F.2d

at 891, 893 n.18.  Furthermore, although disputes of material fact exist, the court concludes that

"a plenary trial on the contested facts prior to making a jurisdictional determination" is not

necessary.  See Gould, 220 F.3d at 177.  As discussed below, the material facts in dispute are

relevant to the "question of actual negligence" and not as to whether subject matter jurisdiction

exists, and therefore should be resolved on the merits and not through a jurisdictional challenge.

---

[4]  In considering Plaintiff's exhibits attached to its motion for summary judgment, the
court is not converting Defendant's motion to dismiss pursuant to Rule 12(b)(1) into a motion for
summary judgment pursuant to Rule 56(c).  The court recognizes that the legal standards of
review for motions pursuant to Rule 12(b)(1) and Rule 56(c) are different and should not be
confused.  However, the factual basis for both motions here are shared.  See, e.g., Gould, 220
F.3d at 178 (acknowledging that often in FTCA cases "the merits of the case are closely
intertwined with the jurisdictional proof").

See Matsko, 372 F.3d at 561-62.   Because a court would "demand[s] less in the way of

jurisdictional proof than would be appropriate at a trial stage," we need not resolve disputed

issues of material fact now.  See Mortensen, 549 F.2d at 892; see also Gould, 220 F.3d at 178.


**B.      Discussion.**

        **1.      Whether Plaintiff's Claims Satisfy The Private Analogue Requirement.**

                *a.      The Private Analogue Requirement.*

Defendant first argues that this court does not have jurisdiction over Plaintiff's claims

because they do not satisfy the private analogue requirement under the FTCA.  Generally, the

United States may not be sued because it enjoys sovereign immunity.  Beneficial Consumer

Discount Co. v. Poltonowicz, 47 F.3d 91, 93-94 (3d Cir. 1993).  The FTCA waives sovereign

immunity as to

> claims against the United States, for money damages . . . for injury or loss of
> property, or personal injury or death caused by the negligent or wrongful act or
> omission of any employee of the Government while acting within the scope of his
> office or employment, *under circumstances where the United States, if a private
> person, would be liable to the claimant in accordance with the law of the place
> where the act or omission occurred.*

28 U.S.C. § 1346(b)(1) (emphasis added).  It is undisputed that Plaintiff has exhausted the

administrative requirements under the FTCA.  See 28 U.S.C. § 2675; (Def.'s Resp. to SUF ¶¶36-

38).

Under the rubric courts reference as the private analogue requirement, the government is

liable under the FTCA if a private person would be liable under state law in like circumstances.

United States v. Olson, 546 U.S. 43, 46 (2005); see, e.g., Estate of Walters v. United States, 474

F.3d 1137, 1139 (8th Cir. 2007); Stratmeyer v. United States, 67 F.3d 1340, 1345 (7th Cir.

1995); <u>Westbay Steel, Inc. v. United States</u>, 970 F.2d 648, 650 (9th Cir. 1992); <u>Howard v. United States</u>, No. 99-cv-3865, 2000 U.S. Dist. LEXIS 12960, at *6 (E.D. Pa. Aug. 25, 2000). "[V]iolation of a federal statute by governmental actors does not create liability unless state law would impose liability on a 'private individual under like circumstances.'" <u>Sea Air Shuttle Corp. v. United States</u>, 112 F.3d 532, 536 (1st Cir. 1997) (quoting 28 U.S.C. § 1346(b)(1)).

        Defendant argues that the private analogue requirement is not satisfied because under state law Defendant did not owe Plaintiff a duty to inspect the plant.  Plaintiff counters that its claims satisfy the private analogue requirement because Defendant can be liable for alleged negligent conduct under three state tort law theories: (1) negligent inspection; (2) Good Samaritan liability for negligently performing services Defendant undertook to render to a party, as stated in the Restatement (Second) of Torts § 323; and (3) Good Samaritan liability for negligently performing services Defendant undertook to render to the general public causing harm to a party, as stated in the Restatement (Second) of Torts § 324A.  See Restatement (Second) of Torts §§ 323, 324A (1965).   Plaintiff correctly argues that even if the source of any duty here is in part under federal law, Plaintiff's claim is not barred if it can show that Defendant's conduct nevertheless violated state Good Samaritan laws.  <u>See</u> <u>Sea Air Shuttle</u>, 112 F.3d at 536; <u>Blessing v. United States</u>, 447 F. Supp. 1160, 1187, 1186 n.37, 1187 (E.D. Pa. 1978) (Becker, J.) (stating that in a FTCA case the government may be held liable for negligent inspection even where the source of the duty arises under federal law if the plaintiff's claims are based on alleged breaches of duty arising under state law).

### b.    The Good Samaritan Rule Generally.

Under the Good Samaritan rule, which has been adopted as the law of Pennsylvania, a person is "liable to another for breach of a duty voluntarily assumed by affirmative conduct, even when that assumption of duty is gratuitous."  Patentas v. United States, 687 F.2d 707, 713-714 (3d Cir. 1982) (citing Indian Towing Co. v. United States, 350 U.S. 61 (1955); Restatement (Second) of Torts §§ 323, 324A)); see Blessing, 447 F. Supp. at 1187 (recognizing that Restatement (Second) of Torts §§ 323 and 324A correctly state Pennsylvania law); Cantwell v. Allegheny County, 483 A.2d 1350, 1353-54 (Pa. 1984) (adopting Restatement (Second) of Torts § 324A); Gradel v. Inouye, 421 A.2d 674, 677-78 (Pa. 1980) (adopting Restatement (Second) of Torts § 323).

Courts have treated negligent inspection liability as subsumed under the Good Samaritan rule analysis.  See Blessing, 447 F. Supp. at 1187, 1189 (stating that courts applying Pennsylvania law apply the Good Samaritan rule in the context of negligent inspection claims).  The court therefore does not address Plaintiff's negligent inspection claim as separate from its Good Samaritan liability claims.

The basic precept of the Good Samaritan rule, the "duty is measured by the undertaking," is applied to negligent inspection claims.  Id.; see Patentas, 687 F.2d at 716 ("[T]he scope of a good samaritan's duty is measured by the scope of his or her undertaking.").  Liability for negligent inspection arises where the inspector has physically undertaken to inspect "the specific instrumentality causing the injury" or "the entire physical plant of which the specific instrumentality is a part," and the other prongs of the Good Samaritan rule are met.  Blessing, 447 F. Supp. at 1189; see Patentas, 687 F.2d at 716.

It is undisputed that the FSIS physically inspected carcass No. 05125274, the specific instrumentality at issue here, by taking a tissue sample from it and sending it for testing.  At issue is whether Plaintiff can show that the requirements for Good Samaritan liability under Sections 323 and 324A are otherwise met.

### c.      *Section 323 Does Not Apply To Plaintiff.*

Section 323 of the Restatement provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323.  Plaintiff argues that Defendant is liable under Section 323 because FSIS undertook to perform services to Plaintiff that FSIS should have recognized as necessary for the protection of Plaintiff's property – that is, testing, segregating, reporting results on, and directing the release or destruction of Plaintiff's carcasses – and then allegedly negligently rendered those services.  Plaintiff argues that FSIS's negligent performance of those services increased its risk of harm and that it relied upon FSIS to perform the services undertaken non-negligently.

The government can be held liable under Section 323 only if the FSIS inspected the meat at Plaintiff's facility for the benefit of Plaintiff.  See Patentas, 687 F.2d at 716 ("The government may be held liable under section 323 only if the Coast Guard inspected [the vessel] for the benefit of appellants."); see also Barnes v. United States, 448 F.3d 1065, 1067 (8th Cir. 2006) (holding that Missouri's Good Samaritan rule, which incorporates Section 323, "comes into play

only where the plaintiff is the intended beneficiary of the defendant's action").

Defendant argues that Plaintiff cannot meet the requirements of Section 323 because the public, and not Plaintiff, was the intended direct beneficiary of Defendant's conduct.  (Def.'s Reply Brief in Supp. of Mot. to Dismiss Pl.'s Compl. 2.)  In support of its argument, Defendant cites Congress' purpose in enacting the Federal Meat Inspection Act ("FMIA"), which was to protect the public by "assuring that meat and meat food products distributed to them are wholesome, not adulterated, and properly marked, labeled, and packaged."  21 U.S.C. § 602. Thus, Defendant argues that it did not engage in its inspection duties to benefit Plaintiff, but rather that its duty to inspect carcasses flowed only to the public.

Plaintiff argues that it was the intended direct beneficiary because Defendant owed Plaintiff, and not only the public, a statutorily-imposed, non-delegable duty.  In the alternative, Plaintiff argues that by retaining carcass No. 05125274 for testing, FSIS assumed a duty to Plaintiff to carry out the testing process competently and thus Plaintiff was the direct intended beneficiary of that duty.

Discussion of the relevant statutes and regulations is necessary.  The FMIA "directs USDA to inspect the sanitary conditions of meat processing plants and to 'prescribe the rules and regulations of sanitation under which these establishments [are] maintained.'"  Munsell v. Dep't of Agriculture, 509 F.3d 572, 575 (D.C. Cir. 2007) (quoting 21 U.S.C. § 608).  The FMIA specifically requires that "the Secretary shall cause to be made by inspectors appointed for that purpose a post mortem examination and inspection of the carcasses and parts thereof" of all livestock.  21 U.S.C. § 604.  FSIS inspectors conduct these post-mortem inspections.  See 9 C.F.R. pts. 310-11, §§ 381.76-94.  The FMIA requires FSIS inspectors to mark all carcasses

found to be not adulterated as "Inspected and passed," or marked with the USDA legend, and all those found to be adulterated as "Inspected and condemned."  21 U.S.C. § 604; 9 C.F.R. §§ 310.5, 310.8, 381.79.  If the FSIS inspector finds any condition "that might render the meat or any part unfit for food purposes," the carcass must be retained for veterinary disposition.  9 C.F.R. § 310.3.  All inspected and condemned adulterated carcasses must be destroyed in the presence of an inspector.  21 U.S.C. § 604.

In 1996, the FSIS promulgated a regulation, known as the Hazard Analysis and Critical Control Point ("HACCP"), which was aimed at industry self-regulation and required that all meat processing plants develop and implement controls to address various food safety hazards.  9 C.F.R. pt. 417; 61 Fed. Reg. 38,806 (July 25, 1996); see 21 U.S.C. § 621 (granting the Secretary authority to "make such rules and regulations as are necessary for the efficient execution" of the FMIA).  Under the HACCP, plants have "considerable flexibility" to design plans to prevent food safety hazards, subject to performance standards set by FSIS.  Munsell, 509 F.3d at 575 (citing 9 C.F.R. § 417.2); see Am. Fed'n of Gov't Employees, AFL-CIO v. Glickman, 215 F.3d 7, 9 (D.C. Cir. 2000).  "FSIS inspectors evaluate plants' hazard prevention through direct observation and testing, and by examining plants' records."  Munsell, 509 F.3d at 575 (citing 9 C.F.R. § 417.8).  Thus, under the HACCP, "a finding that a product is not adulterated [is] based on FSIS's determination that the establishment's food safety and sanitation control systems are preventing adulteration."  Am. Fed'n of Gov't Employees, 215 F.3d at 9.  FSIS may take a range of actions to enforce the HACCP, including withholding USDA approval from meat products.  Munsell, 509 F.3d at 575-76 (citing 9 C.F.R. pt. 500).

In American Federation of Government Employees, AFL-CIO v. Department of

Agriculture, the U.S. Court of Appeals for the District of Columbia Circuit was presented with apparently conflicting mandates under the FMIA and HAACP as to which entity, the FSIS or plant employees, were responsible for the personal inspection of carcasses.  215 F.3d at 8 (addressing whether the FMIA permits "federal inspectors to step back from the processing lines and perform their inspection duties by overseeing inspections conducted by plant employees").  Notwithstanding the changes under the HACCP to the meat inspection process, the court found that the FSIS may not delegate the task of inspecting carcasses to plant employees, because this would violate the clear mandate to inspect under the FMIA.  Id. at 11.  Therefore, it is ultimately the FSIS inspectors, and not plant employees, who must "make the critical determination whether a [meat] product is adulterated or unadulterated."[5]  Id.

Thus, by law, the FSIS must do more than "monitor[] compliance by meat processors with their HACCP plans," (Def.'s Mem. of Points and Authorities in Supp. of Mot. to Dismiss Pl.'s Compl. (hereinafter "Def.'s Mem. Supp. Mot. to Dismiss") 4), and ultimately has a duty personally to inspect each carcass and make the determination whether it is adulterated or unadulterated.  Having established this duty, however, Plaintiff has not established that this duty runs directly to it by statute.

_____

[5]  Nevertheless, the D.C. Circuit later found that this requirement is not inconsistent with an USDA inspection model in which plant employees can remove some adulterated carcasses before they get to FSIS inspectors, so long as FSIS are the last in the line personally inspecting the carcass or its parts.  Am. Fed'n of Gov't Employees, ALF-CIO v. Veneman, 284 F.3d 125, 130 (D.C. Cir. 2002); see Am. Fed'n of Gov't Employees, ALF-CIO v. Glickman, 127 F. Supp. 2d 243, 247 (D.D.C. 2001) (suggesting FSIS inspectors cannot forbid private employees from making any adulteration decision because such may give rise to an absurd scenario where "a private employee seeing a carcass crawling with maggots must not remove the carcass from the slaughter line, but must hope that the FSIS inspector stationed down the line . . . will catch the adulteration"), aff'd sub nom. Am. Fed'n of Gov't Employees, ALF-CIO v. Veneman, 284 F.3d 125 (D.C. Cir. 2002).

Plaintiff relies upon the district court decision in <u>General Public Utilities Corporation v.</u> <u>United States</u> for the proposition that Defendant owes it, as well as the public, a direct duty under the FMIA.  <u>See</u> 551 F. Supp. 521 (E.D. Pa. 1982) (Troutman, J.), <u>certified question answered by,</u> <u>remanded by</u> 745 F.2d 239 (3d Cir. 1984) (remanding after finding that plaintiffs' FTCA claims were barred by the discretionary function exception and not addressing the issue of intended beneficiary).  However, that case is distinguishable.  It involved a different statutory scheme.  In holding that plaintiffs in the nuclear power industry were direct intended beneficiaries of certain provisions of the Energy Act, the court pointed to language in the statutes, regulations, and legislative history that required more than mere inspection by the government and instead mandated the government to disseminate reports of abnormal occurrences at nuclear facilities on an industry-wide basis.  <u>Id.</u> at 525-26.  The court concluded that these provisions of the Energy Act created some duty on the part of the government to monitor nuclear experiences and disseminate warnings that ran to both the nuclear power industry and the public.  <u>Id.</u> at 526.

The FMIA, however, has no requirement that the government disseminate reports or warnings of abnormal occurrences to the meat industry, or require that the government provide any other type of service directly to the meat industry.  Rather, the FMIA merely notes the consequences of adulterated meat on the meat industry.  21 U.S.C. § 602 (stating that adulterated meat products "result in sundry losses to . . . processors of meat").  Based on the plain language of the statute, as Defendant correctly argues, the purpose of the FMIA is to protect the "health and welfare of consumers."  <u>Id.</u>  Therefore Plaintiff, as a matter of law, is not the intended direct beneficiary of Defendant's inspection duties under the FMIA.  <u>See</u> <u>Barnes v. United States</u>, 448 F.3d 1065, 1067 (8th Cir. 2006) (finding that "the FSIS conducts inspections to ensure that the

poultry sold to the public is sanitary, not to benefit chicken-processing plants or their owners"
and therefore concluding that the government could not be liable under Section 323's Good
Samaritan rule); cf. Patentas v. United States, 687 F.2d 707, 716 (3d Cir. 1982) (finding that the
Ports and Waterways Safety Act created inspection duties only to the public generally and
therefore concluding that Section 323 was inapplicable).

Plaintiff's alternative argument that Defendant owed Plaintiff a duty the moment FSIS
retained and tested carcass No. 05125274 does not change the court's conclusion.  Plaintiff
seems to conflate Section 323's requirement for an intended direct beneficiary, expressed in the
language "[o]ne who *undertakes* . . . to render service to another," with the requirement that the
person should recognize those services "as necessary for the protection of the other's person or
things."  See Restatement (Second) of Torts § 323 (emphasis added).  A party that meets the
latter requirement may not necessarily meet the former requirement.  The fact that Section 323
does not apply to Plaintiff does not preclude government liability under Section 324A.  See
Patentas, 687 F.2d at 716.

The court lacks subject matter jurisdiction, as a matter of law, over Count II for negligent
performance of undertaking to render services to Plaintiff.  Accordingly, Count II is dismissed.

### d.    *Section 324A Applies To Plaintiff.*

Section 324A provides:

One who undertakes, gratuitously or for consideration, to render services to
another which he should recognize as necessary for the protection of a third
person or his things, is subject to liability to the third person for physical harm
resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon
the undertaking.

Restatement (Second) of Torts § 324A.  Plaintiff argues that Defendant is liable under Section
324A because FSIS undertook to render services to the general public that FSIS should have
recognized as necessary for the protection of Plaintiff's property and then allegedly negligently
performed those services.  Plaintiff argues that FSIS's alleged negligent performance of the
services increased Plaintiff's risk of harm and that Plaintiff relied upon FSIS to perform its
undertaken services non-negligently.

Defendant counters that Plaintiff cannot state a claim under Section 324A because: (1)
Plaintiff was not a foreseeable third party beneficiary; (2) there was no physical harm; (3) there
was no reliance by Plaintiff; and (4) there was no increased risk of harm.

### *i.      Plaintiff Was A Forseeable Third Party Beneficiary.*

Defendant argues that Plaintiff cannot meet the requirements of Section 324A because
any harm to Plaintiff was not foreseeable.  (Def.'s Reply Brief in Supp. of Mot. to Dismiss Pl.'s
Compl. 3.)  Section 324A's requirement that the defendant has undertaken "to render services to
another which he should recognize as necessary for the protection of a third person" has been
interpreted to state a requirement of foreseeability.  Cantwell v. Allegheny County, 483 A.2d
1350, 1353-54 (Pa. 1984); see id. at 1354 ("[I]f there was no reason that the defendant should
have foreseen that his actions were necessary for the protection of the plaintiff, no cause of action
will lie under § 324A."); see also Patentas, 687 F.2d at 714 (stating that one theory of recovery
under the Good Samaritan doctrine is where there is "a foreseeable third party beneficiary of
gratuitously rendered services").  This is not a requirement for foreseeable harm, as Defendant

appears to argue, but for a forseeable third party beneficiary.  See id.  Defendant argues that it

was not reasonable for Plaintiff to expect to benefit from FSIS inspection activities because the

FSIS activities are geared to benefit the public.

 The court rejects Defendant's argument.  Plaintiff clearly benefits from the FSIS's non-

negligent performance of its inspection and testing duties authorized under the FMIA.  In

rendering these inspection services to the public, Defendant should recognize them as necessary

for the protection of Plaintiff's property, that is, its carcasses.  The court therefore concludes that

Plaintiff was a third person who was a foreseeable beneficiary of the FSIS inspection.  See

Patentas, 687 F.2d at 716.


### *ii.      There Was Physical Harm.*

 Defendant next argues that Plaintiff cannot meet the requirement of physical harm under

Sections 324A because Plaintiff's claimed harm is purely economic.  (Def.'s Reply Brief in

Supp. of Mot. to Dismiss Pl.'s Compl. 4.)  The Ninth Circuit case upon which Defendant relies,

Love v. United States, 915 F.2d 1242, 1248 (9th Cir. 1989), even if applicable is distinguishable.

It involved FTCA claims under the Good Samaritan rule for economic harm arising out of an

alleged abuse of a contractual relationship.  Id.  Here, Plaintiff has shown a physical harm, in that

543,661 pounds of Plaintiff's beef product were adulterated through contact with carcass No.

05125274 and consequently had to be destroyed due to Defendant's alleged negligent

performance of its inspection and testing duties.

### *iii.      Plaintiff Has Shown Reliance.*

Defendant argues that Plaintiff cannot show reliance under Sections 324A(c).  (Def.'s Reply Brief in Supp. of Mot. to Dismiss Pl.'s Compl. 4-5.)  To establish a claim for detrimental reliance under the Restatement, the plaintiff must show knowledge of the purpose of the government's inspection and that this knowledge of the government's undertaking induced the plaintiff "to forego other remedies or precautions against the risk."  Patentas, 687 F.2d at 717 (quoting Restatement (Second) of Torts § 324A, cmt. e) (alteration omitted).

Defendant argues that Plaintiff had an independent obligation to ensure that its meat products were wholesome and unadulterated and could have inspected its own product, noting that Plaintiff faced possible criminal penalties if it placed adulterated meat products into interstate commerce.  See 21 U.S.C. §§ 610(c)(1), 676.  However, it has been established that FSIS inspectors, and not plant employees, must "make the critical determination whether a [meat] product is adulterated or unadulterated."  Am. Fed'n of Gov't Employees, 215 F.3d at 11. Regardless of any duty of Plaintiff to ensure that its meat products were unadulterated, Plaintiff can state a claim for reliance on FSIS's inspection if it can show that it was caused thereby not to undertake other remedies or precautions.  See Patentas, 687 F.2d at 717.

Plaintiff asserts that it knew that FSIS was inspecting its carcasses and that, in the absence of a government inspection process, it would have implemented its own inspection and testing program.  (Pl.'s Reply Mem. of Law in Supp. of its Mot. for Summ. J. 9.)  It asserts that it did not create its own inspection function in reliance upon FSIS's inspection and testing of all carcasses for pathological conditions.  (Pl.'s Mem. of Law in Supp. of its Mot. for Summ. J. 13.)

Using the lessened standard for jurisdictional proof applicable under Rule 12(b)(1), and

24

assuming *arguendo* that Plaintiff's reliance was reasonable and that Defendant failed to exercise reasonable care, the court finds that Plaintiff meets the reliance requirement under Section 324A. See Gould Elec. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000); Mortensen v. First. Fed. Sav. & Loan Ass'n, 549 F.2d 884, 892 (3d Cir. 1977).  As explained below, the issues of whether Plaintiff's reliance was reasonable and whether Defendant failed to exercise reasonable care are questions of disputed fact that go to actual negligence,[6] and are inappropriate for determination on a Rule 12(b)(1) motion.  See Matsko v. United States, 372 F.3d 556, 561-62 (3d Cir. 2004).

### *iv.     Plaintiff Has Shown An Increased Risk Of Harm.*

Defendant further argues that, under Section 324A(a), Defendant's alleged conduct could not have increased any risk of harm because at issue is an act of omission, not commission. (Def.'s Reply Brief in Supp. of Mot. to Dismiss Pl.'s Compl. 3-4.)  Defendant also argues that the government's meat inspection did not increase the risk of harm, but simply allowed the hazard to continue.  (Def.'s Mem. Opp. Summ. J. § II.A.)  Plaintiff counters that Defendant's negligent performance of its inspection and testing duties increased Plaintiff's risk of harm. (Pl.'s Reply Mem. of Law in Supp. of its Mot. for Summ. J. 8.)

Under the full Restatement formulation, reliance need not be proven to hold the government liable under § 324A if the plaintiff can show an increased risk of harm.  Patentas, 687 F.2d at 715-16.  The issue of "increased risk" is "a question of legal causation."  Id. at 717. The Third Circuit has interpreted "increased risk" under the Restatement to mean "some physical change in the environment or some other material alteration of circumstances."  Id.  An act of

---

[6]  See discussion infra. Part IV.B.

omission does not meet this requirement.  Id.  Defendant relies on a district court case, Santillo v. Chambersburg Engineering Company, 603 F. Supp. 211, 214 (E.D. Pa. 1985), to argue that negligent inspection can never meet the requirements of Section 324A(a), but Third Circuit precedent does not preclude this possibility.  See Patentas, 687 F.2d at 715-17 (considering in a negligent inspection case brought under the FTCA whether there was an increased risk of harm but concluding that the plaintiffs had failed to identify acts of commission rather than omission).

Defendant's conduct in releasing or permitting the release of a contaminated carcass before the test results for that carcass were returned was not an act of omission.  The act was not, as Defendant characterizes it, merely Ismail's alleged failure to cross-reference the CRL with FSIS documentation to determine whether carcass No. 05125274 had undergone a LAB test.  Nor was the act, as Defendant argues, simply one of misrepresentation, i.e., Ismail's alleged statement to Figueroa that the carcass did not undergo a LAB test.[7]  Rather, in signing off for carcass No. 05125274, the FSIS inspector undertook an affirmative act of allegedly releasing carcass No. 05125274, or permitted its release, so that it became commingled with other meat, and he did this without awaiting the return of the LAB test results.

Defendant's alleged negligent performance of its inspection and testing duties therefore would increase Plaintiff's risk of harm.  The alleged act of releasing contaminated meat without awaiting test results can lead to the physical, material adulteration of other meat products.  It is not the case that negligent meat inspection merely allows a hazard to continue.  The harm is not contained in the single contaminated carcass released.  The risk of harm is increased exponentially in relation to the amount of meat product potentially commingled with and

---

[7]   See discussion infra. Part III.B.2, Plaintiff's FTCA Claims Are Not Barred By The Misrepresentation Defense.

adulterated by the contaminated meat.

Assuming Defendant acted negligently, Plaintiff can show that FSIS's alleged negligent performance of inspection and testing duties did in fact cause Plaintiff harm because, once Plaintiff's product was found to be adulterated, Plaintiff had to initiate a product withdrawal.  As explained below, however, the issue of whether Defendant failed to exercise reasonable care is a question of disputed fact that goes to actual negligence,[8] and is inappropriate for determination on a Rule 12(b)(1) motion.  See Matsko, 372 F.3d at 561-62.

Plaintiff therefore has met its burden to show under Rule 12(b)(1) that its FTCA claims pursuant only to Section 324A of the Restatement – Count I, for negligent inspection, and Count III, for negligent performance of undertaking of services to the general public causing harm to Plaintiff – satisfy the private analogue requirement under the FTCA.  See Gould, 220 F.3d at 178.


### 2.    Plaintiff's FTCA Claims Are Not Barred By The Misrepresentation Defense.

Defendant next argues that, even if the private analogue requirement is satisfied, Plaintiff's claims are barred by the misrepresentation exception to the waiver of sovereign immunity under the FTCA.  (Def.'s Mem. Supp. Mot. to Dismiss 6-9.)

The FTCA precludes recovery for "any claim arising out of misrepresentation."  28 U.S.C. § 2680(h).  A negligent misrepresentation claim alleges that the government "breached its duty to use due care in obtaining and communicating information upon which the plaintiff may reasonably be expected to rely."  Cross Bros. Meat Packers, Inc. v. United States, 705 F.2d 682,

---

[8] See discussion infra. Part IV.B.

684 (3d Cir. 1983) (quoting United States v. Neustadt, 366 U.S. 696, 706 (1961)) (alterations

omitted).  A claim is for negligent representation where a plaintiff would not have suffered any

injury independent of his or her reliance on the "communication of misinformation."  Id. (quoting

Block v. Neal, 460 U.S. 289, 296 (1983)); see Beneficial Consumer Discount Co. v.

Poltonowicz, 47 F.3d 91, 96 (3d Cir. 1993) ("The essence of an action for misrepresentation . . .

is a communication of misinformation upon which the recipient relies.").  A claim is for

negligence, and not negligent misrepresentation, where "the Government's misstatements are not

essential to plaintiff's negligence claim."  Block, 460 U.S. at 297; Cross Bros., 705 F.2d at 684.

"[T]he fact that a party could bring a misrepresentation claim is no bar to the assertion of other

valid claims arising from the same transaction or occurrence."  JM Mech. Corp. v. United States,

716 F.2d 190, 196 (3d Cir. 1983).

Defendant argues that Plaintiff's claims are based on an alleged communication of

misrepresentation only, namely Ismail's alleged oral representation to Figueroa that carcass No.

05125274 had been submitted for a FAST, and not a LAB, test.  Defendant characterizes the

alleged harm as purely economic and argues plaintiff would not have suffered any injury

independent of its reliance on the communication of misinformation.

The Third Circuit's decision in Cross Brothers Meat Packers, Inc. v. United States, is

determinative.  705 F.2d at 683-84.  In Cross Brothers, the plaintiff had contracted with the U.S.

Department of Agriculture's Food Safety and Quality Service to grade its beef for a fee.  Id. at

683.  Bringing claims under the FTCA, the plaintiff alleged that the two government meat

graders were negligent in improperly grading the meat and supervising the grading, which caused

the plaintiff to lose profits, business, customers, and good will.  Id.  The Third Circuit

28

acknowledged the difficulty of determining whether a claim was for misrepresentation or negligence, because both "often have certain factual and legal questions in common." Id. at 684. The court found that the plaintiff's claims were for negligence, and not misrepresentation, because the "meat was irrevocably devalued when the grade was placed upon it" and plaintiff's reliance on government statements did not affect the meat's value. Id. Thus, the government's misrepresentation defense was precluded because the "crux" of the plaintiff's claims was for "breach of government officials' duty to use due care in inspection and supervision." Id.

The court finds that Plaintiff's claims are not for misrepresentation, but are instead for negligent conduct based on Ismail's signing for the release of carcass No. 05125274, which he was supposed to know FSIS had sent out for a LAB test, without first verifying the accuracy of the CRL against FSIS records or verifying the return of all test results. As in Cross Brothers, it was not Plaintiff's reliance on Ismail's alleged statements that affected the value of its meat. See id. Rather, Ismail's alleged act of releasing carcass No. 05125274, or of permitting that carcass to be released, would have directly "irrevocably devalued" Plaintiff's meat by triggering the release of carcass No. 05125274 to be commingled with and to adulterate other meat product. See id. Once commingled and contaminated, that meat became unfit for human consumption.

In other words, even if Ismail had not made any communication to Plaintiff regarding carcass No. 05125274, Plaintiff would have suffered an independent injury due to his alleged *act* of releasing carcass No. 05125274, or of permitting its release, to commingle with other meat without awaiting the return of the test results. See id. The court therefore rejects Defendant's argument that, unlike Cross Brothers, Plaintiff's reliance on Ismail's alleged communication was

the sole cause of the devaluation of Plaintiff's meat.[9]

Thus, as in Cross Brothers, the crux of Plaintiff's claim is Defendant's alleged negligent performance of operational tasks, which were the duty to inspect and test carcasses.  See id. Because the FSIS inspector's alleged misstatement is not essential to Plaintiff's negligence claim, Plaintiff's claims are for negligence, and not negligent misrepresentation.  See Block, 460 U.S. at 297; Cross Bros.,705 F.2d at 684.  That Ismail also may have communicated misinformation upon which Plaintiff could have relied, and consequently that Plaintiff could bring a misrepresentation claim, does not bar Plaintiff's negligence claims "arising from the same transaction or occurrence."  See JM Mech. Corp., 716 F.2d at 196.

Defendant also attempts to distinguish National Carriers, Inc. v. United States, 755 F.2d 675 (8th Cir. 1985).  In that case, the plaintiff's truck that was transporting its beef overturned, causing part of its cargo to be submerged in muddy ditch water.  Id. at 676.  An USDA inspector agreed to identify and separate the contaminated meat at the accident site, but then instructed workers to stop separating the meat and did not tag the contaminated meat.  Id.  The meat became commingled and other USDA inspectors condemned the entire truckload.  Id.  The Eighth Circuit found that, irrespective of the USDA inspector's misrepresentation, he acted negligently in failing to perform his duty to identify and separate the contaminated beef.  Id. at 677.

Defendant argues that whereas in National Carriers the inspector had failed to follow regulations to suggest segregating the contaminated meat, Ismail did not know that carcass No. 05125274 had malignant lymphoma when he signed the CRL and therefore had no reason to

---

[9]  Defendant also argues that whereas the duty in Cross Brothers flowed directly from the inspectors to the plaintiff because there was a contract involved, in this case the duty of the FSIS inspectors flows not to Plaintiff, but to the public.  The court has addressed this argument above and, with respect to the Restatement (Second) of Torts § 324A, rejected it.

suggest segregating the carcasses.  Defendant ignores that Ismail had a statutory duty to inspect and segregate meat that might be contaminated, and therefore should not have signed for the release of carcass No. 05125274 until he knew there was no positive test result and no potential for adulteration.

Plaintiff has met its burden to show that its remaining FTCA claims are not barred by the misrepresentation defense.  See Gould, 220 F.3d at 178.  Dismissal of Counts I and III under Rule 12(b)(1) is not warranted because Plaintiff's claims are not clearly immaterial, made solely for the purpose of obtaining jurisdiction, or frivolous.  See id.


## IV.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A.      Legal Standard For A Motion For Summary Judgment.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).  In order to defeat a motion for summary judgment, disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322-23.  In reviewing a motion for

summary judgment, the court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion."  Seigel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1127 (3d Cir. 1995).

**B.      Discussion.**

The court has already set forth above the applicable rules for claims under the FTCA and Restatement (Second) of Torts § 324A, and will not reiterate them.  The court concludes that genuine issues of material fact exist as to whether Defendant failed to exercise reasonable care in releasing or permitting the release of carcass No. 05125274 and whether Plaintiff's reliance on the FSIS inspector's conduct was reasonable.[10]

Plaintiff presents evidence that Ismail, without awaiting the test results for carcass No. 05125274, signed off for it on the CRL as if it had undergone only a FAST test, even though the CRL listed it for a LAB test.  Plaintiff avers that it relied on Ismail's conduct.  In contrast, Defendant presents evidence that when Plaintiff's employee presented the CRL to him, the notation for the LAB test for carcass No. 05125274 had already been crossed out and FAST test

---

[10]  Plaintiff raises several jurisdictional arguments in its motion for summary judgment that overlap with those the court has addressed above with respect to Defendant's motion to dismiss.  In addition, Plaintiff argues in its summary judgment motion that its claims are not barred by the discretionary function defense.  Under the discretionary function exception to the FTCA, the government retains sovereign immunity with respect to "any claim . . . based upon the exercise or performance [of,] or the failure to exercise or perform[,] a discretionary function or duty . . . , whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  Defendant in its motion to dismiss does not argue that the discretionary function defense applies to preclude the court's exercise of jurisdiction.  In response to Plaintiff's motion for summary judgment, Defendant argues that genuine issues of material fact exist as to whether it applies.  Because Defendant does not argue that the discretionary function defense applies and because the court denies Plaintiff's motion for summary judgment on other grounds, the court does not reach Plaintiff's arguments regarding the discretionary function defense.

designation inserted, and that Ismail relied on that misrepresentation. Whereas Plaintiff contends that Ismail's signature effectively released the carcass, the government contends that Plaintiff retrieved the carcass alone, and without authorization, from the USDA retention area.

There are therefore genuine issues of material fact as to whether Defendant failed to exercise reasonable care and whether Plaintiff's reliance was reasonable. Plaintiff may have erred when it presented its own document, the CRL, to the FSIS inspector. The FSIS inspector may have made a mistake or may have contributed to Plaintiff's mistake. It may be, as Defendant suggests, that the inspector himself was deceived by Plaintiff's alleged notations in the CRL. It may be that, under the circumstances, Plaintiff's employee Raspaldo, Figueroa's supervisor, had a duty not to change the CRL to reflect that a FAST test had been ordered and not to proceed until test results were returned or the possible confusion with or by Ismail was resolved.

Sufficient undisputed material facts have not been presented to determine at this time the following: the FSIS's practice or procedure in verifying the test that a carcass had undergone, whether the test result had been returned, and the test result before signing off on the CRL; whether the FSIS inspector in fact followed these steps before signing off on carcass No. 05125274; and whether those steps were reasonable. Thus, the court does not reach whether the FSIS inspector was negligent per se. The court concludes that whether there was negligence on the part of the government, whether there was negligence on the part of Plaintiff, and whether either party was solely, primarily, or contributorily negligent are all questions of fact.

**V.  CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is granted, in part, and denied, in part, and Plaintiff's Motion for Summary Judgment is denied.  An Order follows.